*In re* YVELISSE FINGERHUT MANDRY, querellada.

*Número:* CP-2014-10          *Resuelto:* 30 de agosto de 2016

328

*Karla Z. Pacheco Álvarez*, subprocuradora general, y *Yaiza-marie Lugo Fontánez*, procuradora general auxiliar; *César A. Hernández Colón*, de *Hernández Colón & Vidal, S.R.L.*, abogado de la querellada; *Crisanta González Seda*, comisionada especial.

PER CURIAM:

I

La Lcda. Yvelisse Fingerhut Mandry (querellada) fue admitida al ejercicio de la abogacía el 31 de octubre de 1977.[1]

---

[1] Nótese que, aun cuando la licenciada Fingerhut Mandry fue admitida al ejercicio de la abogacía el 25 de enero de 1978, posteriormente fue dada de baja, el 31

El 24 de septiembre de 2007, el Sr. Enrique Mandry Mercado (quejoso) presentó una queja contra la abogada de epígrafe. En ésta, el quejoso cuestionó las actuaciones de la licenciada Fingerhut Mandry al disponer de bienes pertenecientes a una menor de edad, en calidad de apoderada, cuando la escritura en virtud de la cual ostentaba dicho poder había sido otorgada sin que la menor tuviera capacidad para consentir. Asimismo, el señor Mandry Mercado alegó que la querellada no solicitó ni obtuvo la autorización judicial correspondiente para disponer de los bienes de la referida menor. Por otra parte, el quejoso indicó que la querellada presuntamente lo representó legalmente sin tener autorización para ello. Conviene, pues, repasar someramente los pormenores fácticos en función de los cuales se le imputan a la licenciada Fingerhut Mandry las faltas éticas que nos ocupan.

El 1 de diciembre de 2001 se otorgó ante el Lcdo. Roberto J. García Cabrera una escritura en virtud de la cual la licenciada Fingerhut Mandry se convirtió en una de las apoderadas de la Sra. María del Carmen Llombart Bas y su hija, quien en aquel momento tenía 14 años de edad. Este poder facultaba a los apoderados a: representar a las poderdantes en la disposición y adquisición de bienes muebles e inmuebles; recibir el pago por deudas a su favor; dar y tomar dinero a préstamos; extraer dinero de sus cuentas; administrar sus bienes y arrendarlos, y representarlas ante todos los tribunales, entre otras funciones. Esta escritura, además, se utilizó para confeccionar dos escrituras posteriormente, en las cuales, en efecto, se dispuso de ciertos intereses propietarios de la menor.

Así las cosas, el 2 de abril de 2013, la queja que nos ocupa se refirió a la Oficina de la Procuradora General. Ello, como consecuencia del informe preparado por la Oficina de Inspección de Notarías (ODIN) en la tramitación de

---

de enero de 2007, en virtud de una solicitud de renuncia voluntaria al ejercicio de la abogacía.

las quejas disciplinarias presentadas por el quejoso contra los notarios que intervinieron en la disposición de los bienes de la menor que nos atañe.[2] Valga señalar que en dicha disposición la licenciada Fingerhut Mandry compareció, en calidad de apoderada, y sancionó la cesión de cierta participación de la menor de edad en un inmueble a cambio de una deuda. Asimismo, es menester destacar que la licenciada de epígrafe compareció, también, en calidad personal, puesto que tenía una participación en la transacción en cuestión. Por otra parte, la licenciada Fingerhut Mandry compareció, tanto en calidad de apoderada de la menor como en calidad personal, a la posterior otorgación de una escritura de segregación y compraventa. En ninguno de estos casos obtuvo autorización judicial para efectuar las transacciones en cuestión.[3]

Por lo tanto, el 30 de septiembre de 2013, la Oficina de la Procuradora General emitió el informe correspondiente. En éste concluyó que las actuaciones de la querellada, al intervenir en calidad de apoderada de una menor en la disposición de bienes de ésta sin obtener una autorización

---

[2] Es preciso destacar que el señor Mandry Mercado también presentó quejas contra los notarios Juan J. Ramírez Rivera y Roberto J. García Cabrera. Éstas, sin embargo, fueron debidamente atendidas por este Tribunal y culminaron con la censura enérgica al notario Ramírez Rivera y con la suspensión del licenciado García Cabrera del ejercicio de la notaría por un año. Véase *In re García Cabrera et al.*, 188 DPR 196 (2013).

[3] Conviene recordar que nuestro ordenamiento, por disposición estatutaria, requiere la autorización judicial en ciertos casos relacionados con la disposición de bienes muebles e inmuebles de un menor de edad. En particular,

"[e]l ejercicio de la patria potestad no autoriza a ninguno de los padres para enajenar o gravar bienes inmuebles de clase alguna, o muebles cuyo valor exceda de dos mil dólares ($2,000), pertenecientes al hijo, y que estén bajo la administración de ambos o de cualquiera de ellos, sin previa autorización de la Sala del Tribunal de Primera Instancia en que los bienes radiquen, previa comprobación de la necesidad o utilidad de la enajenación o del gravamen, y de acuerdo con lo dispuesto en la ley referente a procedimientos legales especiales". Art. 159 del Código Civil de Puerto Rico, 31 LPRA sec. 616. Véanse, además: Art. 1710 del Código Civil de Puerto Rico, 31 LPRA sec. 4822; Art. 614(5) del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 2721(5).

En el caso que nos ocupa, no cabe duda de que era necesario que las instancias judiciales competentes autorizaran las transacciones en cuestión, dada la valoración de éstas. Por una parte, la deuda en función de la cual se cedió la participación de la menor sobre cierto inmueble estaba valorada en $97,775. Asimismo, el inmueble objeto de la escritura de segregación y compraventa estaba valorado en $18,000.

judicial, bien podían constituir violaciones a los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Por otra parte, en cuanto a las alegaciones del quejoso respecto a que la querellada lo representó legalmente sin autorización para ello, la Oficina de la Procuradora General determinó en su informe que éstas no se sostenían.

Luego de varios trámites procesales, el 26 de junio de 2014, la Oficina de la Procuradora General, previa Resolución de este Tribunal, presentó una querella contra la licenciada Fingerhut Mandry, en la que le imputó haber vulnerado las normas éticas consagradas en los Cánones 35 y 38 del Código de Ética Profesional. Luego de una prórroga otorgada por este Tribunal, la querellada contestó la querella el 15 de agosto de 2014.

El 9 de enero de 2015, este Tribunal designó a la Hon. Crisanta González Seda como Comisionada Especial para que recibiera la prueba y emitiera el informe correspondiente. En consecuencia, luego de que se celebraran las vistas evidenciarias de rigor, la Comisionada Especial emitió su informe. En éste, luego de hacer un examen minucioso de la prueba, determinó que, en efecto, la querellada incumplió los preceptos éticos encarnados en los Cánones 35 y 38. Sin embargo, luego de apreciar las circunstancias personales de la licenciada Fingerhut Mandry, recomendó que la sanción se limitara a una censura enérgica. Valga señalar que la licenciada Fingerhut Mandry compareció, posteriormente, allanándose a las determinaciones de hecho y las recomendaciones de la Comisionada Especial.

Procede, pues, exponer sucintamente las normas éticas pertinentes al caso ante nuestra consideración.

## II

El Canon 35 del Código de Ética Profesional consagra un deber indefectible de sinceridad y honradez, el cual ha de guiar la labor de los abogados frente a todos, y "no sólo en la tramitación de litigios, sino en todo tipo de acto". *In re Pons Fontana*, 182 DPR 300, 306 (2011). Véanse: 4 LPRA Ap. IX, C. 35; *In re Collazo Sánchez*, 159 DPR 769, 773 (2003). Este deber, además, está íntimamente relacionado con la preservación del honor y la dignidad de la profesión, debido a que el abogado, en tanto profesional del Derecho y dada la prominencia pública de su ministerio, tiene un compromiso incondicional e ineludible con la verdad. Véase *In re Irizarry Vega*, 176 DPR 241, 245 (2009). Véase, además, *In re Busó Aboy*, 166 DPR 49 (2005). Asimismo, este Tribunal ha afirmado que

[e]l deber que, conforme al Canon 35 del Código de Ética Profesional, *supra*, tiene un abogado de ser fiel a la realidad de los hechos al suscribir documentos y declaraciones juradas, trasciende el ejercicio de sus funciones como abogado o notario. Incluye aquellas facetas de su vida en las que se despoja de su toga de abogado para convertirse en un ciudadano común. Ese deber tiene que ser cumplido estrictamente aunque el así hacerlo conlleve sacrificios personales. No podemos, pues, refrendar tal conducta, independientemente de que ninguna persona ha resultado perjudicada. El mero hecho de que un abogado mienta bajo juramento es una conducta lesiva al buen nombre de la profesión y a las instituciones de justicia, independientemente de los motivos que se tengan para ello. (Cita omitida). *In re Belk, Serapión*, 148 DPR 685, 691–692 (1999).

Es menester enfatizar, también, que los deberes y las normas éticas que supone este canon constituyen "normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión. Por ello, deben ser observadas por los abogados [...] *en toda faceta en la que se desempeñen*". (Énfasis suplido). *In re Martínez, Odell I*, 148 DPR 49, 54 (1999). Es decir, el Canon 35 trasciende el

ámbito propiamente profesional del abogado y exige que éste actúe de modo sincero y honrado en el desempeño de cualquier otra actividad.

Por su parte, el Canon 38, en lo pertinente, dispone que el abogado "deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". 4 LPRA Ap. IX. En función de los preceptos de este canon, "los miembros de nuestra profesión deben estar en un ejercicio constante de introspección en que analicen si su conducta va acorde con la responsabilidad ética y moral que permea el ejercicio de la abogacía". *In re Gordon Menéndez*, 183 DPR 628, 642 (2011). Después de todo, los abogados son un reflejo de la imagen y confianza de la profesión. Por lo tanto, deben actuar de manera harto escrupulosa y guiados por un robusto sentido de responsabilidad; ello, dada la ingente función social que ejercen. *In re Nieves Nieves*, 181 DPR 25, 45 (2011).

En lo que respecta la apariencia de conducta impropia, este Tribunal ha dicho que ésta "tiene un efecto dañino sobre la imagen, la confianza y el respeto de la ciudadanía hacia la profesión, así como lo tiene la verdadera 'impropiedad ética' ". *In re Toro Iturrino*, 190 DPR 582, 591–592 (2014). Por último, conviene recordar que este Canon 38 permite sancionar la conducta éticamente reprochable, aun cuando ésta bien pudiera subsumirse en otros cánones. Así, los deberes éticos contenidos en este canon, además de ser razón suficiente para sancionar a un abogado, atraviesan la totalidad de nuestro ordenamiento ético disciplinario.

## III

En consideración de lo anterior, es inevitable concluir que la licenciada Fingerhut Mandry, en efecto, vulneró los

deberes éticos consagrados en los Cánones 35 y 38 del Código de Ética Profesional. En lo que respecta el deber de sinceridad y honradez impuesto por el Canon 35, la licenciada de epígrafe lo contravino al comparecer a la otorgación de unas escrituras que, a todas luces, carecían de validez, puesto que en éstas se disponía de bienes de una menor de edad sin que se hubiera obtenido una autorización judicial para ello. Nótese, además, que los bienes en cuestión excedían la cuantía dispuesta en nuestro ordenamiento después de la cual es imperativo obtener dicha autorización judicial. Con dicho proceder, la licenciada Fingerhut Mandry obró en contra del deber de sinceridad y honradez que informa la gestión de los abogados en nuestra jurisdicción, tanto en el ámbito profesional como en el personal.

Asimismo, no cabe duda que, con sus actuaciones, la licenciada Fingerhut Mandry laceró la dignidad y el honor de la profesión legal, toda vez que sus actuaciones incidieron en la confianza depositada por la ciudadanía en ella. Esto, al margen de que la licenciada en cuestión haya comparecido a la otorgación de la escritura de poder que nos atañe en calidad personal. Después de todo, las normas éticas que regulan el ejercicio de la profesión legal trascienden el plano meramente profesional y han de guiar, también, el desempeño de los letrados en su faceta personal. Añádase a lo anterior que en las escrituras en las que la licenciada Fingerhut Mandry compareció en calidad de apoderada, ésta también compareció en calidad personal, puesto que tenía intereses personales en los bienes en cuestión. Ello, a su vez, denota un conflicto de interés que, como mínimo, constituye la apariencia de conducta impropia.

Por último, es preciso señalar que este Tribunal ha tomado en consideración una serie de factores al momento de imponer una sanción disciplinaria, a saber:

[...] (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) *la aceptación de la falta y su sincero arrepentimiento*; (v) si se trata de una conducta aislada; (vi) *el ánimo de lucro que medió en su actuación*; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien *atenuantes o agravantes*, que medien de acuerdo con los hechos. (Énfasis en el original). *In re Quiñones Ayala*, 165 DPR 138, 147 (2005).

En función de éstos, como se dijo, la Comisionada Especial recomendó que limitáramos nuestra sanción a una censura enérgica en el caso que nos ocupa. Ello, luego de sopesar una serie de factores, entre éstos: la reputación intachable de la licenciada de epígrafe en la comunidad; la ausencia de ánimo de lucro; una comparecencia especial de la menor manifestando no haber sufrido ningún perjuicio, y el hecho de que se trata de un hecho aislado, puesto que la licenciada Fingerhut Mandry no ha sido objeto de ningún otro procedimiento disciplinario.

Habida cuenta de lo anterior, sin embargo, estimamos que, en este caso, procede suspender a la licenciada Fingerhut Mandry del ejercicio de la abogacía por un término de tres meses. Al margen de cualquier circunstancia atenuante, la gravedad de las actuaciones de la licenciada Fingerhut Mandry, al comparecer a la otorgación de una escritura en la que se dispuso de bienes de una menor de edad sin una autorización judicial para ello, amerita que la suspendamos de la profesión legal, si bien por un término relativamente corto. Téngase en cuenta, además, que la licenciada Fingerhut Mandry tenía intereses propietarios en los bienes en cuestión.

## IV

En vista de lo anterior, *se suspende a la licenciada Fingerhut Mandry del ejercicio de la abogacía por un término de tres meses. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos,*

*devolverles cualquier honorario recibido por trabajos no realizados e informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos del País en los que tenga algún asunto pendiente. Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta opinión "per curiam" y sentencia.*

*Se dictará sentencia de conformidad.*

La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado Señor Estrella Martínez concurrieron sin una opinión escrita. El Juez Asociado Señor Kolthoff Caraballo no intervino.