EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2025 TSPR 27 |
|---|---|
| Carlos E. González Foster (TS-17,933) | 215 DPR ___ |

Número del Caso: AB-2018-0120

Fecha: 24 de marzo de 2025

Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Oficina del Procurador General:

    Hon. Isaías Sánchez Báez
    Procurador General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcda. Gisela Rivera Matos
    Procuradora General Auxliar

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

    Lcda. Melanie M. Mercado Méndez
    Procuradora General Auxiliar

Representante legal del Promovido:

    Por derecho propio

Materia: Conducta Profesional – Censura, apercibimiento y suspensión inmediata del ejercicio de la notaría por el término de tres (3) meses por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos E. González Foster
      (TS-17,933)

AB-2018-0120

*PER CURIAM*

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Una vez más este Tribunal se ve obligado a ejercer su facultad disciplinaria respecto a un miembro de la profesión legal que, con su proceder, infringió la *Ley Notarial de Puerto Rico*, *infra*, (Ley Notarial), el Reglamento Notarial, *infra*, y el Código de Ética Profesional, *infra*. Al tomar en cuenta la conducta que reseñaremos, censuramos y apercibimos al Lcdo. Carlos F. González Foster (licenciado González Foster) por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. Además, le suspendemos por el término de tres (3) meses de la práctica de la notaría por infracciones a la Ley y al Reglamento Notarial. A continuación, hacemos un recuento sobre los hechos que dieron paso a esta acción disciplinaria.

**I**

El matrimonio compuesto por el Sr. Miguel Santiago Estién (señor Santiago Estién) y la Sra. Teresa Tapia Rivera (señora Tapia Rivera) (en conjunto, matrimonio Santiago Tapia) contrató al Lcdo. Carlos E. González Foster (licenciado González Foster) para que este gestionara contratos de compraventa sobre tres (3) bienes inmuebles sitos en el Municipio de Vieques. A esos efectos, el 12 de mayo de 2011 el licenciado González Foster notarizó tres contratos privados de compraventa y legitimó las firmas de las partes mediante declaraciones juradas. A través de estos contratos, el Sr. Álex Rafael Negrón Tapia (señor Negrón Tapia), hijo de la señora Tapia Rivera, adquirió las tres propiedades por $2,500 cada una.[1]

El 19 de marzo de 2012 el señor Santiago Estién falleció. A raíz de esto, la Sra. Margarita Figueroa Navarro (señora Figueroa Navarro) presentó una demanda sobre partición de herencia en representación del menor MASF contra la señora Tapia Rivera. En esta alegó que el menor MASF era hijo del señor Santiago Estién por lo que tenía derecho sobre los bienes hereditarios de este último. En consecuencia, la señora Figueroa Navarro solicitó la adjudicación de los activos hereditarios. Entre estos activos se encontraban las

---

[1] Las propiedades se describieron de la manera siguiente: (1) parcela número 42 de la comunidad rural Brisas de Santa María del Barrio Florida en Vieques; (2) solar número 299 en la calle Buena Vista en Vieques; y (3) el solar número 303 frente a la calle Buena Vista en Vieques. La parcela número 42 fue adquirida por los vendedores en el 1993 por $18,000 y el solar número 299 fue adquirida por $650 en 1995, y se edificó una estructura cuyo valor era $50,000. (Véase *Informe* de la Oficina de Inspección de Notarías (ODIN), Anejos XII-XIII).

tres propiedades inmuebles que el matrimonio Santiago Tapia vendió al señor Negrón Tapia.[2]

El licenciado González Foster asumió la representación de la señora Tapia Rivera y el 11 de junio de 2012 contestó la *Demanda*. No obstante, el licenciado González Foster no informó al Tribunal sobre la existencia de los contratos privados mediante los cuales el señor Negrón Tapia adquirió las tres propiedades. Posteriormente, el 9 de enero de 2018 el licenciado González Foster solicitó que se le relevara de representar legalmente a la señora Tapia Rivera. En vista de esto, el 1 de febrero de 2018 el Lcdo. Regalado López Corcino (licenciado López Corcino) asumió la representación legal de la señora Tapia Rivera. Ese mismo mes, el licenciado López Corcino informó al Tribunal sobre la existencia de los tres contratos privados notarizados por el licenciado González Foster.

El 27 de abril de 2018 el foro de instancia celebró una vista de estado de procedimientos. En esta el licenciado López Corcino explicó que encontró los tres contratos de compraventa en un sobre manila dentro del expediente que el señor Negrón Tapia le entregó. La Hon. Thainie Reyes Ramírez (Jueza Reyes Ramírez), quien presidió el caso, cuestionó la procedencia de las declaraciones juradas y el trámite que el licenciado González Foster llevó a cabo para adjudicar las propiedades. En consecuencia, el 4 de mayo de 2019 la Jueza Reyes Ramírez refirió el asunto ante nuestra consideración

---

[2] Véase Margarita Figueroa Navarro, en representación de su hijo M.A.S.F. v. Teresa Tapia Rivera, Civil Núm. N2CI2012000325.

mediante una *Orden*. El 14 de mayo de 2018 la Secretaría de este Tribunal acogió el referido de la Jueza Reyes Ramírez como una *Queja*, y concedió un término de diez (10) días al licenciado González Foster para comparecer.

El 12 de junio de 2018 el licenciado González Foster presentó su *Contestación a la queja*. Sostuvo que fue responsable y diligente previo al otorgamiento de las declaraciones juradas, por lo que cumplió con el Código de Ética Profesional al otorgar las mismas. Ante ello, la Secretaría de este Tribunal refirió el asunto a la Oficina de Inspección de Notarías (ODIN) y la Oficina del Procurador General (OPG) para que realizaran las investigaciones de rigor y rindieran los informes correspondientes.

No obstante, el 18 de julio de 2018 la ODIN solicitó la paralización del procedimiento disciplinario hasta tanto la Sala de Fajardo del Tribunal de Primera Instancia dictara sentencia en el caso sobre la adjudicación de los bienes hereditarios.[3] Asimismo, el 28 de agosto de 2018 la OPG compareció y reiteró los planteamientos de la ODIN sobre la paralización del procedimiento disciplinario. En vista de las referidas solicitudes, emitimos una *Resolución* el 25 de enero de 2019 en la cual ordenamos la paralización de la queja ética hasta que se dictara sentencia final y firme en el caso ante la consideración del foro primario.

El 19 de abril de 2023 emitimos una *Resolución* mediante la cual ordenamos a la ODIN y a la OPG a informar sobre el

---

[3] Miguel Ángel Santiago Figueroa v. Álex Rafael Negrón Tapia, Civil Núm. N2CI2012000325.

estatus del caso civil. La ODIN compareció e informó que el 16 de diciembre de 2022 el Tribunal de Primera Instancia emitió una *Sentencia* en la que se adjudicó la controversia sobre la validez de los contratos que notarizó el licenciado González Foster. De manera específica, la ODIN indicó que el foro de instancia determinó que los contratos privados de compraventa eran "negocios simulados, con donaciones subyacentes, las cuales, a su vez, [eran] inoficiosas por no cumplir con el requisito esencial de constar en escritura pública".[4] Así, solicitó la continuación del procedimiento disciplinario. Por otro lado, la OPG presentó su *Escrito informativo en cumplimiento de orden* el 1 de mayo de 2023. En este, la referida dependencia solicitó que concediéramos el petitorio de la ODIN.

Tras contar con la comparecencia de las partes, el 8 de junio de 2023 emitimos otra *Resolución* en la cual concedimos al licenciado González Foster un término para que se expresara sobre el procedimiento disciplinario en su contra. El licenciado González Foster compareció y expresó que descansó en la buena fe de sus clientes en cuanto a la valoración de los inmuebles. Incluso, apeló a su inexperiencia al momento de otorgar las declaraciones juradas como la razón por la cual cometió los errores señalados. El 30 de junio de 2023 emitimos una *Resolución* mediante la cual ordenamos la desparalización del proceso disciplinario. Además, concedimos a la ODIN un término de sesenta (60) días para que realizara

---

[4] *Íd.*, pág. 22.

la investigación de rigor y presentara el informe correspondiente.

El 9 de agosto de 2023 la ODIN presentó su *Informe*. En este determinó que el licenciado González Foster: (1) legitimó las firmas en los contratos privados de compraventa, y que (2) notarizó documentos que contenían negocios jurídicos simulados de donación.[5] La ODIN expresó que el Art. 56 de la Ley Notarial, *infra*, y la Regla 68 del Reglamento Notarial, *infra*, prohíben expresamente la legitimación de firmas en documentos que consignan la compraventa de bienes inmuebles. Además, adujo que correspondía que el licenciado González Foster corroborara la información provista por sus clientes. Específicamente, expuso que el licenciado González Foster tenía el deber de conocer que el valor pactado entre las partes para la compraventa de las tres propiedades inmuebles sitas en el Municipio de Vieques estaba por debajo del valor real, por lo que el negocio jurídico constituyó una donación y no una compraventa.

Así, la ODIN indicó que el licenciado González Foster incurrió en una práctica notarial indeseable, faltó a su deber de sinceridad y honradez, y violó la fe pública notarial al otorgar un documento público en contravención con los postulados notariales. En consecuencia, concluyó que el licenciado González Foster violó el Art. 56 de la Ley Notarial, *infra*, y la Regla 68 del Reglamento Notarial, *infra*,

---

[5] Hacemos constar que la ODIN concluyó que el Lcdo. Carlos E. González Foster no actuó en el rol dual de abogado-notario, ya que no estaban en controversia los contratos de compraventa que autenticó.

al legitimar firmas en un contrato de compraventa privado y que infringió los Cánones 18, 35 y 38 de Ética Profesional, *infra*. Por consiguiente, recomendó la suspensión del licenciado del ejercicio de la notaría por un término de tres (3) meses.

El 31 de agosto de 2023 concedimos al licenciado González Foster un término de veinte (20) días para que reaccionara al *Informe* de la ODIN. Asimismo, concedimos a la OPG un término de sesenta (60) días para que realizara una investigación y presentara el informe correspondiente. El 25 de septiembre de 2023 el licenciado González Foster presentó un *Escrito expresando posición del abogado promovido*. En este admitió haber erróneamente otorgado los contratos privados de compraventa. Explicó que su falta de experiencia informó la decisión de legitimar las firmas y que lo procedente era otorgar una escritura de compraventa. El licenciado expresó arrepentimiento y aceptó que su conducta fue contraria a la práctica ordinaria de la notaría.

Por su parte, el 24 de abril de 2024 la OPG rindió su *Informe*. Al igual que la ODIN, la OPG concluyó que el licenciado González Foster faltó a su deber de diligencia y a su deber de sinceridad y honradez, y violó la fe pública notarial. Además, coincidió con el análisis de la ODIN en cuanto a que el licenciado González Foster transgredió el Art. 56 de la Ley Notarial, *infra*, y la Regla 68 del Reglamento Notarial, *infra*, ya que estos prohíben la legitimación de firmas mediante declaraciones juradas en documentos sobre compraventas de bienes inmuebles.

Además, la OPG sostuvo que, durante el transcurso del litigio, el licenciado González Foster se limitó a alegar que el señor Negrón Tapia tenía un interés en las propiedades, mas no informó al Tribunal sobre la existencia de los tres contratos privados de compraventa. Omitió esto, a pesar de haber autenticado las firmas de los documentos mediante declaraciones juradas. Ante ello, la referida dependencia recomendó censurar al licenciado González Foster por incumplir con los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. Además, recomendó apercibir al licenciado de que en el futuro debe dar fiel cumplimiento a los Cánones del Código de Ética Profesional, *infra*. Finalmente, recomendó el archivo de la queja.

Así las cosas, el 7 de mayo de 2024 concedimos un término de veinte (20) días al licenciado González Foster para expresarse en torno a lo expuesto por la OPG en su *Informe*. Tras concederle una prórroga, el licenciado compareció ante nos el 1 de julio de 2024 mediante *Escrito expresando posición del abogado promovido*. En este, confirmó estar conforme con las recomendaciones de la OPG sobre la censura y el apercibimiento. Nuevamente, expresó arrepentimiento y aceptó los errores cometidos.

**II**

**A.  La legitimación de firmas en documentos notariales**

La profesión notarial se caracteriza por proveer legitimidad a los negocios jurídicos y facilitar el tránsito y desarrollo económico en la isla. In re González Maldonado,

152 DPR 871 (2000). "Nuestra Ley Notarial sigue esta concepción al preceptuar que el notario es el 'único funcionario autorizado para dar fe y autenticidad, conforme a las leyes, a los contratos y demás actos extrajudiciales que ante su presencia se realicen'". In re Feliciano Ruiz, 117 DPR 269, 274 (1986).[6]

"Debido a [su] importancia dentro del tráfico jurídico de bienes, el notario tiene que ser en extremo cuidadoso, así como desplegar sumo esmero y celo en su desempeño profesional". In re González Maldonado, supra, pág. 896. Tal responsabilidad está arraigada a preceptos legales y éticos que exigen el cumplimiento con las disposiciones pertinentes para que los negocios jurídicos que autorice un notario o notaria "estén dentro del estándar adecuado para que sean válidos y efectivos". In re González Pérez, 208 DPR 632, 649 (2022). Es a tenor con esto que hemos reiterado el deber que tienen todos los notarios y las notarias de atenerse a los más altos estándares de calidad. Íd.

El Art. 2 de la Ley Notarial consagra el principio de la fe pública notarial y los deberes que constituyen los pilares fundamentales que todo notario o notaria debe cumplir:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es

---

[6] Véase, además, el Art. 2 de la Ley Notarial, infra.

plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 LPRA sec. 2002.

Cónsono con lo anterior, hemos expresado que la función que ejercen "va más allá de actuar como un legalizador de firmas autómata, ya que posee el deber de verificar que el instrumento público cumpla con todas las formalidades de la ley, que sea legal y verdadero, y finalmente, que se trate de una transacción legítima y válida". In re Sánchez Reyes, 204 DPR 548, 566 (2020).

En lo pertinente, el Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, establece que un notario o notaria puede dar fe de un testimonio o una declaración de autenticidad de un documento no matriz, de su fecha y la legitimación de sus firmas, siempre que no se trate de uno de los documentos enumerados en el Art. 1232 del Código Civil de 1930. 31 LPRA sec. 3453. Igual prohibición consta en la Regla 68 del Reglamento Notarial, 4 LPRA Ap. XXIV, ya que esta es análoga al Art. 56 de la Ley Notarial, supra.

El Art. 1232 del Código Civil de 1930 establece cuáles contratos deben constar en documento público o por escrito. Particularmente, el inciso (1) del referido artículo estipula que **los actos y contratos que tengan por objeto la "creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles" deben constar en documento público.** (Negrilla suplida). 31 LPRA sec. 3453. Ante esto, hemos establecido que "el notario público solo puede dar fe de la **compraventa de un bien inmueble** en un documento público, no

en un documento privado". (Negrilla suplida). <u>In re Muñoz Fernós</u>, 184 DPR 679,684 (2012). Esta norma busca regular la intervención del notario y agilizar el acceso al Registro de la Propiedad de aquellos negocios jurídicos que precisan ser inscritos. 4 LPRA Ap. XXIV R. 68. De esta forma, los contratos privados constituirán negocios jurídicos válidos entre las partes, mientras no cuenten con la intervención de un notario. <u>Íd</u>.

Si las partes desean la intervención de un notario, es necesario que los negocios jurídicos consten en escritura pública. <u>Íd</u>. El fundamento para esta prohibición radica en que, de ordinario, el notario no asume la responsabilidad por el contenido de los documentos privados cuyas firmas legitime. <u>In re Ortiz Medina</u>, 175 DPR 43, 52 (2008). Por lo cual, no tendría sentido emplear la función notarial para darle autenticidad y eficacia a un mero documento privado cuando la tarea primordial del notario consiste en autorizar el negocio plasmado en el documento. <u>Íd</u>. Además, esta prohibición responde al hecho de que los negocios sobre bienes inmuebles están sujetos al pago de aranceles. Por ende, para evitar que el notario se convierta en cómplice de una posible evasión contributiva, la Ley Notarial establece que este solo podrá intervenir en un contrato de tal naturaleza mediante la autorización de un documento público. <u>Íd.</u>, pág. 53.

**B.   Canon 18 de Ética Profesional**

El notario es el profesional del Derecho que ejerce una función pública para dar fe y autenticidad a los negocios jurídicos y actos o hechos extrajudiciales realizados ante

él. In re Ortiz Medina, *supra*, pág. 50. Por ello, hemos establecido que el desconocimiento de las normas jurídicas al ejercer la profesión vulnera la naturaleza misma del notariado e implican una violación al Canon 18 del Código de Ética Profesional. In re Sánchez Reyes, *supra*, pág. 567.

En lo pertinente, el Canon 18 del Código de Ética Profesional indica que "[s]erá impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". 4 LPRA Ap. IX. Es decir, cuando un abogado o abogada acepta la encomienda de representar a una persona y no la ejecuta adecuada y responsablemente, infringe este Canon. In re Nazario Díaz, 195 DPR 623, 636 (2016). Igualmente, el notario queda obligado a ejercer el deber de competencia y diligencia establecido en esta disposición.

Queda claro que un notario o notaria viola el Canon 18 cuando infringe las disposiciones de la Ley Notarial e incurre en una práctica notarial indeseable. In re Aponte Berdecía, 161 DPR 94, 106 (2004). Cónsono con lo anterior, es importante entender la responsabilidad del notario en cuanto a este deber, pues en la función que desempeña, el valor de la voluntad informada de los comparecientes es, en definitiva, la base sobre la cual descansa la fe pública notarial.

### C. Canon 35 de Ética Profesional

Además, el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, resalta el deber de sinceridad y honradez que

le corresponde a todo abogado ante los tribunales, ante sus representados y en las relaciones con sus compañeros. En lo concerniente, hemos señalado que "los abogados y las abogadas deben asegurarse de no proveer información falsa o incompatible con la verdad y de **no ocultar información cierta que deba ser revelada**". (Negrilla suplida). In re Joglar Castillo, 210 DPR 956, 966 (2022).

Es innecesario probar el elemento deliberativo o la intención de defraudar o engañar para demostrar una infracción al Canon 35. Íd., págs. 966-967. Esto se debe a que el sistema judicial se erige sobre "la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales". In re Nieves Nieves, 181 DPR 25, 42 (2011).

D.    **Canon 38 de Ética Profesional**

Por su parte, el Canon 38 del Código de Ética Profesional, *supra*, "impone a todo abogado el deber de conducirse de manera que exalte el honor y la dignidad de la profesión evitando en todo momento el incurrir en conducta impropia y/o en la apariencia de conducta impropia". In re Aponte Morales, 211 DPR 171 (2003). Todo abogado o abogada, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. In re Bermúdez Meléndez, 198 DPR 900 (2017). Así, el Canon 38 del Código de Ética Profesional exalta que un miembro de la profesión legal debe evitar la mera apariencia de conducta profesional impropia. 4 LPRA Ap. IX.

Particularmente, el notario que no desempeñe con cautela y celo la función pública de la notaría "no exalta la profesión legal". In re González Pérez, *supra*, pág. 650. Es por esta razón que hemos establecido que otorgar un documento notarial en contravención con la Ley Notarial, *supra*, constituye una violación al Canon 38 de Ética Profesional. In re Vera Vélez, 148 DPR 1, 8 (1999). En consecuencia, "todo letrado debe desempeñarse de forma escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa". In re Sánchez Pérez, 210 DPR 235, 264 (2022); In re Fingerhut Mandry, 196 DPR 327, 333 (2016).

**E.   Los negocios jurídicos simulados**

La simulación contractual ocurre cuando "los contratantes llevan a cabo un negocio jurídico aparente que encubre otro real con causa lícita, fingido o disimulado". Banco Popular v. Registrador, 172 DPR 448, 454(2007). Como sabemos, la causa es un elemento constitutivo de todo contrato. Delgado Rodríguez v. Rivera Siverio, 173 DPR 150, 160 (2008). Esta debe existir y debe ser lícita; en otras palabras, la causa contractual no puede ser contraria a las leyes o a la moral, ni puede ser falsa. Íd. Una causa falsa es una causa fingida, o una causa que encubre otra verdadera. Íd. No obstante, este Tribunal le ha conferido validez a un contrato simulado que exprese una causa falsa, siempre que se pruebe que el negocio encubre una causa verdadera y lícita. Íd., pág. 161 (citando a Sánchez Rodríguez v. López Jiménez, 116 DPR 172, 181 (1985)).

En el campo de la simulación contractual, hemos reconocido dos tipos de simulación: la relativa y la absoluta. Íd. En lo pertinente, la simulación relativa ocurre para disfrazar un acto. Íd., pág. 162. Esto ocurre cuando "el negocio aparente encubre otro real que los contratantes desean sustraer a la curiosidad e indiscreción de terceros". Hernández Usera v. Srio. de Hacienda, 86 DPR 13, 18 (1962). Es decir, se realiza un negocio jurídico particular cuando, en realidad, se lleva a cabo otro negocio jurídico distinto. Delgado Rodríguez v. Rivera Siverio, *supra*.

Hemos establecido que **la donación subyacente en un contrato simulado de compraventa es el ejemplo más frecuente de simulación relativa contractual**. Hernández Usera v. Srio. de Hacienda, *supra.* La donación subyacente se distingue porque persiste una divergencia entre la apariencia del acto y su contenido ya que la causa verdadera del negocio es la mera liberalidad del donante. Íd. En un contrato simulado de compraventa, esta liberalidad ocurre cuando el precio del bien vendido es menor a su justo valor en el mercado. Véase La Costa Sampedro v. La Costa Bolívar, 112 DPR 9, 21 (1982).

Es necesario destacar que la simulación de negocios jurídicos por parte de un notario supone conducta éticamente reprochable que, como mínimo, vulnera tanto el Art. 2 de la Ley Notarial como el Canon 35 de Ética Profesional. In re Rodríguez Gerena, 194 DPR 917, 923 (2016). Es decir, mediante la simulación, el notario no solo le falta a la verdad, sino

que mancilla la fe pública notarial. Íd. Este Tribunal ha sido enfático al sancionar éticamente esta práctica. Íd.

**III**

En el descargue de nuestra responsabilidad de reglamentar la profesión legal y notarial, evaluamos los hechos de esta queja, así como la evidencia recopilada, con el fin de determinar si el licenciado González Foster incurrió en violaciones al Art. 56 de la Ley Notarial, *supra*; la Regla 68 del Reglamento Notarial, *supra*; así como a los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

La presente acción disciplinaria surgió a raíz de un referido de la Jueza Reyes Ramírez. Específicamente, esta consideró que el licenciado González Foster ocultó la existencia de tres contratos privados de compraventa en el caso de partición de herencia en el cual representó a la señora Tapia Rivera. Ocultó esto aun cuando los referidos contratos eran esenciales para dirimir la controversia sobre la adjudicación de los bienes hereditarios pertenecientes a la Sucesión Santiago Estién. Teniendo lo anterior en cuenta, veamos los señalamientos sobre la conducta del licenciado González Foster.

En primer lugar, el licenciado González Foster legitimó las firmas del señor Santiago Estién, la señora Tapia Rivera y el señor Negrón Tapia en los tres contratos de compraventa privados. El Art. 56 de la Ley Notarial, *supra*, y la Regla 68 del Reglamento Notarial, *supra*, prohíben explícitamente legitimar las firmas en los actos y contratos privados que

tengan por objeto la "creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles" ya que estos deben constar en documentos públicos. 31 LPRA sec. 3453. Hemos establecido que un notario no puede intervenir en los mencionados negocios jurídicos, puesto que el notario no asume la responsabilidad por el contenido de los documentos privados cuyas firmas legitime. Si las partes desean la intervención del notario, es necesario que los negocios jurídicos se notaricen en una escritura pública. Por lo tanto, al legitimar las firmas en los contratos privados de compraventa el licenciado González Foster contravino las disposiciones de la Ley y del Reglamento Notarial y los principios que estos cuerpos normativos promueven.

Luego, como resultado del otorgamiento de los contratos, el señor Negrón Tapia adquirió tres propiedades por $2,500 cada una. En lo pertinente, el foro de instancia determinó en su Sentencia el valor de las referidas propiedades. Según las tasaciones completadas en el 2013 y corroboradas por el Tribunal de Primera Instancia, una de las parcelas fue valorada en $52,000; otra propiedad se tasó en $124,000 y la última en $58,000.[7] Como se estableció anteriormente, un contrato de compraventa simulado ocurre cuando el precio del bien vendido es menor a su justo valor en el mercado. En pocas palabras, el licenciado notarizó documentos que contenían negocios jurídicos simulados de donación al traspasar las propiedades por cuantías muy por debajo de su valor.

---

[7] Miguel Ángel Santiago Figueroa v. Álex Rafael Negrón Tapia, *supra*, pág. 20.

Además, surge del expediente que el señor Santiago Estién y la señora Tapia Rivera le comunicaron al licenciado González Foster su intención de donar las tres propiedades al señor Negrón Tapia.[8] A pesar de esto, el licenciado González Estién otorgó un contrato privado de compraventa y no una escritura de donación. Incluso, el licenciado González Foster arguyó en su primer *Escrito expresando posición del abogado promovido* que descansó en la información provista por el señor Santiago Estién, la señora Tapia Rivera y el señor Negrón Tapia para confirmar el valor de las fincas. No obstante, este Tribunal ha indicado que "la falta de investigación adecuada y responsable constituye una violación a la Ley Notarial". In re Sánchez Reyes, *supra*, pág. 569. Ignorar este deber desvirtuaría la función del notariado como principal custodio de la fe pública. Íd. El licenciado González Foster debió ejercer las diligencias mínimas para conocer el valor actual de las propiedades. Esto es conforme con lo requerido por la función notarial y sus preceptos estatutarios.

Por último, surge del referido de la Jueza Reyes Ramírez que el licenciado González Foster no presentó ante el foro primario los contratos privados que notarizó. Esto aun cuando se debatía la adjudicación de las propiedades. Si bien el asunto medular en la controversia ante la consideración del foro de instancia era si el menor MASF tenía derecho sobre las tres propiedades pertenecientes a la Sucesión Santiago Estién, la controversia no trataba sobre un mero interés o

---

[8] Íd., pág. 21.

mejoras, sino sobre una pugna real sobre la titularidad de las propiedades. A esto último se dirigían los tres contratos privados de compraventa. No obstante, la existencia de estos se informó luego de que el licenciado González Foster renunciara a la representación de la señora Tapia Rivera.

A saber, se desprende del expediente que el licenciado González Foster no informó al tribunal sobre los contratos de compraventa de las tres propiedades a pesar de haber autenticado las firmas de estos anteriormente. Por lo contrario, se limitó a alegar que el señor Negrón Tapia tenía interés en las propiedades en controversia a causa de unas inversiones y mejoras que realizó en estas. Nos parece evidente que el licenciado debió informar al tribunal sobre los contratos privados que legitimó. Esto se debe a que los referidos documentos abonaban de manera sustancial al argumento que el licenciado González Foster presentó ante el foro de instancia. Al no presentarlos, el licenciado González Foster no representó de manera sincera y honrada a la señora Tapia Rivera.

Ante esto, concluimos que el licenciado González Foster infringió el Art. 56 de la Ley Notarial, *supra*, la Regla 68 del Reglamento Notarial, *supra*, y el Canon 18 del Código de Ética Profesional, *supra*, al legitimar firmas contenidas en contratos privados de compraventa. In re Aponte Berdecía, *supra*.

Además, el licenciado González Foster infringió el Canon 35 del Código de Ética Profesional, *supra*, al otorgar los contratos simulados de compraventa y no informar sobre la

existencia de los contratos privados a lo largo de su representación legal de la señora Tapia Rivera. Así, el letrado violó el deber de sinceridad y honradez al ocultar información cierta que debía ser revelada.

Asimismo, el licenciado González Foster violó el Canon 38 del Código de Ética Profesional, *supra*, al no desempeñar con cautela y celo su función pública notarial y al otorgar un documento notarial en contravención con la Ley Notarial. Estos incumplimientos reiterados con los postulados de la notaría no exaltan el honor y la dignidad de la profesión.

**IV**

Por los fundamentos expuestos, censuramos y apercibimos al licenciado González Foster por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. Además, le suspendemos de forma inmediata y por un término de tres (3) meses de la práctica notarial.

Se le impone al licenciado González Foster el deber de notificar a todas las personas que han procurado de sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendiente y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar ante este Tribunal el cumplimiento de lo anterior dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Asimismo, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial del licenciado González Foster y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales queda automáticamente cancelada. La fianza se considerará buena y válida por tres (3) años después de su terminación en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese al licenciado González Foster de esta Opinión *Per Curiam* y *Sentencia* por medio del correo electrónico registrado en el Registro Único de Abogados.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos E. González Foster        AB-2018-0120
    (TS-17,933)

SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, censuramos y apercibimos al Lcdo. Carlos E. González Foster por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Además, suspendemos al licenciado González Foster de forma inmediata y por un término de tres (3) meses de la práctica notarial.

Se le impone al licenciado González Foster el deber de notificar a todas las personas que han procurado de sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendiente y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar ante este Tribunal el cumplimiento de lo anterior dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Asimismo, se le ordena al Alguacil de este Foro

incautar inmediatamente la totalidad de la obra y el sello notarial del licenciado González Foster y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales queda automáticamente cancelada. La fianza se considerará buena y válida por tres (3) años después de su terminación en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico al licenciado González Foster.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                        Javier O. Sepúlveda Rodríguez
                                        Secretario del Tribunal Supremo