EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2026 TSPR 2 |
| | 217 DPR ___ |
| Virgilio J. González Pérez (TS-15,218) | |

Número del Caso: CP-2024-0004

Fecha: 15 de enero de 2026

Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcdo. Edwin B. Mojica Camps
    Subprocurador General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

Representante legal de la querellada:

    Lcda. Daisy Calcaño López

Comisionada Especial:

    Hon. Berthaida Seijo Ortiz

Materia: Conducta Profesional – Suspensión indefinida del ejercicio de la abogacía por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional; los Art. 2, 12, 17, 56, 57, 58 y 59 de la Ley Notarial de Puerto Rio y las Reglas 12, 65, 67 y 72 del Reglamento Notarial.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Virgilio J. González Pérez          CP-2024-0004
       (TS-15,218)


PER CURIAM

En San Juan, Puerto Rico, a 15 de enero de 2026.

Nos corresponde disciplinar a un miembro de la profesión legal por conducta reñida con las disposiciones de la Ley Notarial de Puerto Rico, infra, y nuestro Código de Ética Profesional, infra. En esta ocasión, concluimos que el Lcdo. Virgilio J. González Pérez infringió los Cánones 18, 35 y 38 del Código de Ética Profesional, infra, los Arts. 2, 12, 17, 56, 57, 58 y 59 de La Ley Notarial de Puerto Rico, infra, y las Reglas 12, 65, 67 y 72 del Reglamento Notarial, infra.

I

El licenciado González Pérez fue admitido al ejercicio de la abogacía el 16 de febrero de 2005 y prestó juramento como notario el 30 de marzo de 2005.

El 25 de enero de 2022, el licenciado González Pérez fue suspendido del ejercicio de la abogacía y la notaría por tres meses por notarizar indebidamente unos documentos del traspaso de un vehículo sin la presencia o el consentimiento del vendedor. Además, el notario admitió que no hizo las entradas correspondientes de los documentos en el Registro de Testimonios y que tampoco las notificó en el informe de actividad notarial mensual correspondiente. Véase, In re González Pérez, 208 DPR 632 (2022).

Mientras el licenciado González Pérez estaba suspendido, el 17 de marzo de 2022 la Lcda. Estelle L. Vilar Santos presentó la queja que nos ocupa. En esta, relató que la Sra. Giselle Polanco Pérez compró un vehículo Kia Sorento azul de 2013 al Sr. Ángel Luis López Ramos, vendedor de Auto Lares Corp. Expresó que el señor López Ramos tardó alrededor de nueve meses en hacer entrega del título de propiedad y la licencia de vehículo y traspaso a la señora Polanco Pérez. Por tanto, la señora Polanco Pérez acudió al Centro de Servicios del Conductor (CESCO) de Arecibo, donde se le informó que el vehículo Kia Sorento aparecía a su nombre, al igual que un vehículo Nissan Rogue gris de 2010 que esta no había adquirido.

La licenciada Vilar Santos manifestó, además, que del certificado de título del vehículo Kia Sorento azul de 2013 surgía que el 19 de mayo de 2021 el licenciado González Pérez autenticó las firmas de la señora Polanco Pérez y del Sr. Waldemar Nieves Lamourt, mediante el testimonio de autenticidad número 25,003. Mediante declaración jurada, ambos suscribientes negaron haber estado presentes en el traspaso y

haber firmado el certificado de título en presencia del licenciado González Pérez. La licenciada Vilar Santos expuso que la señora Polanco Pérez aseguró que la firma que aparecía en el documento era suya, pero que ella no la había plasmado en el documento. Mientras, el señor Nieves Lamourt reconoció que había firmado el documento, pero no en presencia del notario. Asimismo, señaló que la numeración del afidávit en el traspaso no corresponde con número alguno asignado en la obra notarial del licenciado González Pérez hasta mayo de 2021.

Por otro lado, la licenciada Vilar Santos adujo que la señora Polanco Pérez expresó que no había adquirido el vehículo Nissan Rogue gris de 2010 que aparecía registrado a su nombre en el CESCO. Explicó que al advenir en conocimiento de este hecho, la señora Polanco Pérez se comunicó con el señor López Ramos. Este le informó que el traspaso del vehículo Nissan Rogue a su nombre había sido un error y que no se percató de ello cuando el gestor, el Sr. Leonides Graulau Heredia, le entregó los documentos. Afirmó que el señor López Ramos adujo que entregaba los documentos sin llenar al señor Graulau Heredia para que este tramitara el traspaso.

Además, indicó que del certificado de título aparecía que el 29 de marzo de 2021 el notario autenticó la firma de la señora Polanco Pérez como compradora, a pesar de que esta nunca compró el vehículo ni estuvo en presencia del letrado. Bajo juramento, la señora Polanco Pérez manifestó que, aunque la firma que constaba del documento era suya, esta no la puso en el documento. De igual forma, expresó que el licenciado González Pérez enumeró el testimonio 24,662. Sin embargo,

dicha numeración no correspondía con los números en la obra notarial del notario hasta mayo de 2021.

No obstante, debido a que el licenciado González Pérez se encontraba suspendido temporalmente del ejercicio de la profesión, el 21 de abril de 2022 ordenamos el archivo administrativo de esta queja. Pasado el periodo de suspensión, readmitimos al togado al ejercicio de la abogacía, pero no de la notaría. Este solicitó su reinstalación como notario. Entonces, el 8 de junio de 2022 denegamos su petición y reactivamos la Queja Núm. AB-2022-0042 que dio origen a la querella de autos.

El 5 de julio de 2022, el licenciado González Pérez contestó la queja. Alegó que desde el 2016 tenía un alto volumen de clientes como notario de concesionarios de autos que lo habían expuesto a acciones negligentes o delictivas de terceras personas. Asimismo, expresó que del referido realizado por el Departamento de Justicia surgían serias interrogantes que no le permitían aceptar o negar lo alegado, puesto que nadie podía certificar que esos títulos fueron juramentados en su oficina. Además, expresó que de las declaraciones juradas se desprendían alegaciones de tipo penal como falsificación de firmas y falsificación del sello de un concesionario. Por tanto, al tener su obra notarial incautada, le resultaba imposible certificar o aceptar que juramentó los títulos objetos del referido.

El 13 de julio de 2022, la Oficina del Procurador General (OPG) envió un requerimiento de información al licenciado González Pérez en el cual solicitó que este brindara

información sobre su relación con el señor Graulau Heredia y el personal de su oficina, así como sobre los rasgos de escritura en los traspasos autenticados con los números 25,003 y 24,662.

El 15 de julio de 2022, el licenciado González Pérez contestó el requerimiento de información y consignó varias reservas, a saber: (1) que los certificados de títulos fueron copias del original, por lo que se reservó el derecho de cambiar o enmendar las respuestas presentadas una vez se examinaran los originales, y (2) que las preguntas relacionadas a los certificados de títulos serían contestadas según el contenido específico de cada interrogante.

En síntesis, el licenciado González Pérez señaló que conocía al señor Graulau Heredia aproximadamente hace tres años, debido a que este era un representante de concesionarios de autos que utilizaba sus servicios como notario. Sostuvo, además, que su relación era exclusivamente de notario a cliente y estimó que el señor Graulau Heredia frecuentaba sus servicios notariales de una a tres veces semanales. En cuanto a los sellos notariales, sostuvo que tuvo tres: uno lo destruyó y los otros dos los entregó a la Oficina de Inspección de Notarías (ODIN).

Por otra parte, en cuanto a si reconocía sus rasgos de escritura en el número de testimonio, el número de licencia del comprador, el nombre y la dirección del comprador, y la fecha del testimonio en los documentos enumerados 25,003 y 24,662, el licenciado González Pérez indicó que no podía precisar dicha información debido a las reservas consignadas,

pero manifestó que no parecía su letra. Respecto a si reconocía sus rasgos de escritura en las firmas de dichos traspasos, el togado nuevamente levantó las reservas consignadas y respondió que tenía rasgos parecidos a su firma, y que tenía duda de haber firmado el certificado de título en controversia. Sobre la interrogante de si conocía alguna similitud en el sello que obraba en los dos traspasos, expresó que levantaba las mismas reservas, pero que parecía tener el mismo diseño de su sello.

El 19 de julio de 2022, recibimos el Informe de la OPG en la que concluyó que no contaba con prueba suficiente para un proceso disciplinario en el caso AB-2022-0042 y solicitó a este Tribunal la autorización para ampliar su investigación y realizar gestiones con el Instituto de Ciencias Forenses (ICF), así como un término adicional para presentar un informe complementario.

El 30 de agosto de 2022, concedimos la petición de la OPG. Además, en esa misma fecha reinstalamos al licenciado González Pérez únicamente al ejercicio de la abogacía.

El 11 de octubre de 2023, el ICF rindió su informe. En este, el Sr. Héctor Figueroa Ramos, Examinador de Documentos Dudosos II del ICF, concluyó que la firma que aparecía en los documentos en cuestión era del licenciado González Pérez y que la impresión del sello poseía las características físicas individuales del sello de goma del togado. Además, expresó que no se observaba alteración en la escritura de los documentos y que no podía concluir con certeza en cuanto al nombre y la firma de la compradora. Por ello, recomendó que se tomaran muestras de escritura de la señora Polanco Pérez.

Previo a la presentación de esta querella, la ODIN informó que el licenciado González Pérez no había notificado la legitimación del testimonio 24,662 con fecha de 29 de marzo de 2021 suscrito por la señora Polanco Pérez. Asimismo, tampoco se notificó el testimonio 25,003 con fecha de 19 de mayo de 2021. También, dispuso que, aunque ambos testimonios fueron notificados en la Actividad Notarial Mensual de noviembre de 2021 por el licenciado González Pérez, los comparecientes en dichos testimonios eran otras personas.

A raíz de estos hallazgos, la OPG concluyó que contaba con prueba clara, robusta y convincente para continuar con el trámite disciplinario contra el licenciado González Pérez. Por ello, el 13 de marzo de 2024 se presentó la querella que nos ocupa, en la que se imputan al licenciado González Pérez catorce cargos por violaciones de los Cánones 18, 35 y 38 del Código de Ética Profesional, infra, los Arts. 2, 12, 17, 56, 57, 58 y 59 de La Ley Notarial de Puerto Rico, infra, y las Reglas 12, 65, 67 y 72 del Reglamento Notarial, infra. En síntesis, la OPG expone que el licenciado González Pérez dio fe falsamente de que los comparecientes firmaron en su presencia; omitió incluir los testimonios de autenticidad número 24,662 y 25,003 en su Registro de Testimonios y en el Índice Notarial; utilizó un número para estos que no le correspondía según el orden utilizado en su Registro de Testimonios; e incumplió los requisitos de identificación impuestos en la Ley Notarial. Además, se le imputaron infracciones de los Cánones 18, 35 y 38 al actuar sin

diligencia, deshonestamente y en menoscabo del honor de la profesión.

El 25 de noviembre de 2024, el togado presentó una contestación suplementaria a la querella en la que expresó que la firma que aparece en los documentos en cuestión no es su firma. Además, dispuso que: (1) los números de testimonios no coinciden con número alguno en las copias de los índices; (2) nadie apuntaba a tener conocimiento personal de que el togado había juramentado los títulos y que el propio gestor no recordó si los títulos fueron juramentados en la oficina del togado; (3) su firma y sello se pueden falsificar, y (4) el informe de su perito privado estableció que la firma en los documentos no era la suya. Por ello, negó haber infringido las disposiciones de la Ley Notarial, su Reglamento y los Cánones 18, 25 y 38 de Ética Profesional.

Posteriormente, el 27 y 28 de enero de 2025 se celebró la vista final en su fondo. Las controversias de hechos ante la Comisionada Especial Berthaida Seijo Ortiz fueron: (1) si el licenciado González Pérez firmó el dorso del certificado de Título del Nissan Rogue 2010, Título A-4338014, y plasmó su sello notarial para autenticar la firma de la señora Polanco con el testimonio de autenticidad número 24,662, y (2) si el licenciado González Pérez firmó el dorso del certificado de Título del Kia Sorrento 2013, Título A-11236610, y plasmó su sello notarial para autenticar la firma de la señora Polanco Pérez y el señor Nieves Lamourt en el testimonio de autenticidad número 25,003.

Durante estas vistas, la OPG presentó los testimonios del señor López Ramos, el señor Graulau Heredia y el señor Figueroa Ramos. En resumen, el señor López Ramos testificó que vendía automóviles en Lares y le daba al señor Graulau Heredia los documentos para el traspaso. Declaró no recordar en esa fecha a la señora Polanco Pérez, aunque luego la OPG refrescó su memoria con una declaración jurada y recordó la venta del Kia Sorento a la señora Polanco Pérez. Además, indicó que hubo una confusión en cuanto a la venta del Nissan Rogue a la señora Polanco Pérez.

Por su parte, el señor Graulau Heredia declaró que: (1) era gestor de Obras Públicas aunque no tenía licencia para ello; (2) conocía al señor López Ramos porque era cliente; (3) para la fecha de 2021 llevaba los documentos de traspaso al licenciado González Pérez, a quien conocía desde el 2018; (4) no recordó si tuvo alguna intervención con el traspaso del Kia Sorento, aunque luego se le proveyó una declaración jurada, y recordó que él tramitó el traspaso y lo llevó a la oficina del togado, y (5) reconoció que no estuvo presente ni vio al togado firmar el dorso de ese certificado de título.

En su testimonio, el señor Figueroa Ramos, Examinador de Documentos Dudosos del ICF, concluyó que el licenciado González Pérez era el autor de la firma del notario en los documentos de traspaso. En su explicación, dedujo que llegó a esta conclusión porque los hábitos de escritura eran los mismos en los documentos cuestionados y conocidos. Asimismo, concluyó que había una identificación positiva del sello, ya que la impresión y el sello de goma se trabajan artesanalmente y cada

sello tiene características únicas e individuales. Por último, concluyó que no se observaban alteraciones en la escritura original y que fue una escritura natural.

En cuanto a la señora Polanco Pérez y el señor Nieves Lamourt, no fueron llamados como testigos. Sin embargo, se admitieron en evidencia unas declaraciones juradas suscritas por estos.

De la otra parte, el licenciado González Pérez declaró que no firmó ni autorizó los testimonios de autenticidad número 24,662 y 25,003 y que la firma que aparece en los documentos de traspaso no es la suya. Afirmó que los números de testimonios de autenticidad antes mencionados correspondían a unos testimonios que él autorizó el 1 y 30 de noviembre de 2021, donde comparecieron otros otorgantes.

Durante el contrainterrogatorio, la OPG confrontó al licenciado González Pérez por las versiones encontradas que ofreció en su testimonio. Así surge con claridad del Informe de la Comisionada Especial:

> [E]l querellado fue confrontado en cuanto a que, aun cuando declaró en la vista final que desde que vio el documento sabía que no era su firma, en la contestación a la queja del 5 de julio de 2022, indicó que se le hacía imposible certificar o aceptar si juramentó o no esos títulos y que no indicó que había diferencias con su firma y no dijo que "el rabito era más largo".
>
> A su vez, ante lo declarado de que para 2021 no brindaba sus servicios al señor Graulau Heredia, se le confrontó con lo informado en la "Contestación a Requerimiento de 15 de julio de 2022- en el que expuso que conocía al señor Graulau Heredia hacía tres años, pero no había indicado que había cesado de darle los servicios. Informe de la Comisionada Especial, pág. 17.

Además, manifestó que no recordaba si en el pasado había puesto un número en un afidávit que no hubiese incluido en el índice de ese mes o en el Registro de Testimonios. No obstante, la OPG confrontó al letrado con los hechos consignados en la Opinión *Per Curiam* de su suspensión previa y este reconoció que había asignado un número que no le correspondía a un afidávit por no tener consigo el Libro de Testimonios. Véase, Memorando sobre la Prueba de la OPG, pág. 15; Informe de la Comisionada Especial, pág. 17.

En cuanto al señor Álvarez Ghigliotti, perito calígrafo contratado por el querellado, este declaró que había diferencias significativas en los trazos de las firmas. Por lo tanto, concluyó que el togado no firmó los títulos ni escribió la información al dorso por las diferencias en formas y estilos de letras y números. No obstante, no pudo concluir si el sello correspondía al del licenciado González Pérez, ya que no pudo observar características individuales para dar una opinión adecuada.

De igual modo, el perito testificó que: (1) las gráficas presentadas en su informe no incluían todas las muestras, aun cuando pudo examinarlas todas; (2) ninguna persona escribe de manera idéntica dos veces debido a que las personas pueden variar su firma; (3) una variación podría ser la eliminación del gancho que observó en las firmas conocidas y no en las cuestionadas; (4) los documentos presentados por la OPG evidencian trazos fluidos y carentes de temblores;(5) una firma de trazos se puede reproducir con relativa facilidad si la persona ha memorizado su forma de otro modelo o con previa

práctica, y (6) el licenciado González Pérez fue quien le proveyó los documentos que identificó en su informe, pero no podía certificar si el letrado los había firmado.

El 30 de mayo de 2025, la Comisionada Especial rindió su informe final en el que recomendó la desestimación y archivo de la querella por entender que la OPG no había logrado probar los catorce cargos imputados mediante prueba clara, robusta y convincente. En síntesis, la Comisionada expresó que "la prueba presentada y creíble no demuestra de forma clara, robusta y convincente que el querellado haya firmado y plasmado su sello notarial en los testimonios de autenticidad núm. 24,662 y 25,003…". Informe de la Comisionada Especial, pág. 22.

La Comisionada Especial consideró que, según las declaraciones juradas de la señora Polanco Pérez y el señor Nieves Lamourt se desprendía la existencia de firmas falsificadas y de un sello de goma falsificado. Además, concluyó que los testimonios de los testigos de la OPG, el señor López Ramos y el señor Graulau Heredia, fueron vagos, imprecisos, evasivos, ambiguos e inconsistentes. Por ello, aportaron a crear dudas sobre la comisión de las infracciones imputadas al licenciado González Pérez.

Por otro lado, la Comisionada Especial informó que el testimonio del perito del ICF y las gráficas utilizadas para su informe, restaron peso o credibilidad a las conclusiones del perito de la OPG. Además, mencionó que las gráficas, que eran producto del "work-product" del perito, fueron presentadas a solicitud de la parte querellada en su

contrainterrogatorio. Por el contrario, la Comisionada Especial le otorgó credibilidad a las gráficas y el testimonio del señor Álvarez Ghigliotti, quien concluyó que la firma que aparece en ambos títulos de propiedad no era la firma del licenciado González Pérez.

El 20 de junio de 2025, la OPG presentó un escrito de reacción al informe de la Comisionada Especial en el que manifestó su inconformidad con las conclusiones de la Comisionada Especial, y entendió que esta había errado en su apreciación de la totalidad de la prueba ante su consideración. Por su parte, el licenciado González Pérez se allanó al Informe de la Comisionada Especial.

Evaluado el expediente en su totalidad, estamos en posición de resolver, no sin antes exponer el marco jurídico aplicable.

II

El Código de Ética Profesional establece las normas mínimas que rigen la conducta de los miembros de la profesión legal. Preámbulo del Código de Ética Profesional, 4 LPRA Ap. IX. El propósito de este cuerpo normativo es "promover los más altos principios éticos para beneficio del cliente, la profesión, la sociedad y las instituciones de justicia". In re Oller López, 2025 TSPR 34, 215 DPR __ (2025); In re Vilches López, 196 DPR 479, 484-485 (2016).

Como parte de nuestro poder inherente de regular la profesión legal en Puerto Rico, tenemos la obligación de asegurar que los miembros admitidos a la práctica de la abogacía realicen sus funciones de manera responsable,

competente y diligente. In re Santiago López, 2025 TSPR 61, 216 DPR __ (2025); In re Oller López, supra. "En virtud de este poder, este Tribunal puede desaforar o suspender a los miembros de la profesión legal que no muestren la aptitud necesaria para desempeñar tan dedicada labor". In re Hernández López, 2025 TSPR 87, 216 DPR __ (2025). Asimismo, hemos dispuesto que "[l]os notarios y notarias están subsumidos a los preceptos éticos que rigen nuestra profesión". In re González Pérez, supra, pág. 645. Por tanto, al ejercer la función notarial estos deben observar tanto las disposiciones de la Ley Notarial y su Reglamento, como los Cánones del Código de Ética Profesional. Íd. La inobservancia de estos postulados no solo expone al notario a sanciones severas, sino que causa inestabilidad en los negocios jurídicos del país. Íd.

### A. Disposiciones notariales

El Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2002, recoge el principio rector de la fe pública notarial y los deberes fundamentales que todo notario viene obligado a cumplir. In re Rádinson Caraballo, 2025 TSPR 71, 216 DPR __ (2025). A estos efectos, el Art. 2 dispone que "[l]a fe pública notarial es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento". 4 LPRA sec. 2002. En virtud de este artículo, "el notario viene llamado a ejercer su ministerio con esmero, diligencia y estricto celo profesional". In re Rádinson Caraballo, supra; In re Román Jiménez, 213 DPR 467, 474 (2024). Es decir, el

notario debe verificar que el instrumento público cumpla con todas las formalidades legales, sea legal y veraz, y responda a una transacción legítima y válida. In re Villalona Viera, 206 DPR 360, 370 (2021).

En ese sentido, "[e]l Estado le confiere a un documento autorizado por un notario, bajo su firma, signo, sello y rúbrica, *una presunción de credibilidad y certeza* de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad". In re Collazo Sánchez, 159 DPR 769, 774 (2003). De hecho, cuando un notario consigna hechos no veraces en una escritura, aun cuando no medie la intención de faltar a la verdad y solo sea una ausencia de diligencia o celo en su gestión notarial, este incurre en falta. Íd., págs. 775-775.

Por otra parte, el Art. 12 de la Ley Notarial de Puerto Rico, supra, y la Regla 12 del Reglamento Notarial, 4 LPRA Ap. XXIV, impone a los notarios el deber de rendir un índice sobre sus actividades notariales en el mes. En su informe, los notarios harán constar, respecto a las escrituras matrices y los testimonios autorizados por ellos, "los números de orden de éstos, los nombres de los comparecientes, la fecha, el objeto del instrumento o del testimonio, la cuantía de cada instrumento y el nombre de los testigos, de haber comparecido alguno". 4 LPRA sec. 2023.

A su vez, el Informe de Actividad Notarial Mensual deberá ser cumplimentado no más tarde del décimo día calendario del mes siguiente al informado. Íd. Estos índices de actividad tienen el propósito de garantizar la certeza de los documentos en los que intervienen los notarios. In re González Pérez,

supra, pág. 646. Por ende, el incumplimiento con este deber menoscaba la fe pública notarial. Íd.

Sabido es que, como parte de sus funciones, el notario prepara los testimonios o declaraciones de autenticidad. In re Villalona Viera, supra, pág. 371. Cónsono con lo anterior, el Art. 56 de la Ley Notarial de Puerto Rico, supra, establece que un testimonio o una declaración de autenticidad es un documento mediante el cual un notario da fe de un documento no matriz, de su fecha y legitimación de sus firmas. 4 LPRA sec. 2091; In re González Pérez, supra, pág. 647. Asimismo, la Regla 65 del Reglamento Notarial, supra, define el testimonio o declaración de autenticidad como el acto y documento notarial que no va al Protocolo, "en el que el notario expresa, bajo su fe notarial, sello y firma, sobre la veracidad de un hecho ocurrido ante él o que le conste". En consecuencia, los notarios no pueden dar fe notarial de un documento en el que la persona otorgante no comparezca personalmente. In re González Pérez, supra. Al así hacerlo, el notario quebranta la fe pública notarial y afecta la confianza depositada en el sistema de autenticidad documental. Íd. Aún más, da fe de un hecho falso en contravención a la Ley Notarial de Puerto Rico, supra, y al Código de Ética Profesional, supra. In re Arocho Cruz et al., 198 DPR 360, 367 (2017).

Por su parte, la Regla 67 del Reglamento Notarial, supra, dispone que el testimonio de legitimación de firma es aquel que acredita que, en determinada fecha, se firmó un documento en presencia del notario por la persona que evidentemente es quien dice ser. Véase, In re Rafols Van Derdys, 211 DPR 34, 41

(2022); In re Villalona Viera, supra, pág. 372. Además, el Art. 57 de la Ley Notarial de Puerto Rico, supra, y la Regla 67 del Reglamento Notarial, supra, "precisa que el notario tiene que hacer constar, tanto en el testimonio como en el Registro de Testimonios, que conoce personalmente al firmante o que lo ha identificado mediante los métodos supletorios que provee el Art. 17 de la Ley Notarial". In re Villalona Viera, supra. Al actuar de este modo, el notario garantiza tanto la identidad del firmante como la realización del acto en su presencia. Íd.

En cuanto al Art. 17 de la Ley Notarial de Puerto Rico, supra, este señala los siguientes métodos de identificación, a saber, el notario puede identificar a una persona: (a) mediante la afirmación de una persona que conozca al otorgante y sea conocida por el notario; (b) a través de la identificación de una de las partes contratantes, siempre que el notario de fe de conocer a quien identifica, y (c) por medio de un documento oficial con foto y firma, que sea expedido por las autoridades competentes. 4 LPRA sec. 2035.

En lo pertinente, el Art. 58 de la Ley Notarial de Puerto Rico, supra, indica claramente que los testimonios serán enumerados de forma sucesiva y continua. 4 LPRA sec. 2093. Además, establece que los testimonios "serán encabezados por el número que les corresponda, que será correlativo al de la inscripción en el registro". Íd.

Por último, el Art. 59 de la Ley Notarial de Puerto Rico, supra, expresamente indica que los notarios deben registrar y anotar todos los testimonios que autoricen en el Registro de

Testimonios, antes conocido como el Registro de Afidávit. Regla 72 del Reglamento Notarial, supra.

### B. Cánones de Ética Profesional

El Canon 18 del Código de Ética Profesional, supra, requiere que los miembros de la profesión legal sean diligentes en la tramitación de los casos. In re Pérez Rojas, 213 DPR 244, 256 (2023). Es decir, el Canon 18 requiere que los profesionales del derecho rindan una labor idónea, competente, cuidadosa y diligente. In re Hernández López, supra. Por tanto, "cuando un abogado acepta una encomienda de representar a una persona y no la ejecuta adecuada y responsablemente, infringe este Canon". In re González Foster, 2025 TSPR 27, 215 DPR __ (2025). En virtud de este canon, el notario también queda obligado a "ejercer el deber de competencia y diligencia". Íd. Hemos expresado que infringe este canon el notario que tome livianamente el celo de la custodia de la fe pública notarial al no ejercer la profesión con el cuidado y la prudencia que se requiere. In re Bravo García, 2025 TSPR 13, 215 DPR __ (2025). Consecuentemente, incumple con el Canon 18 todo notario que viole las disposiciones de la Ley Notarial y de su Reglamento. Íd.

Por su parte, el Canon 35 del Código de Ética Profesional, supra, resalta el deber de sinceridad y honradez que le corresponde a todo profesional del derecho ante los tribunales, sus representados y en las relaciones con otros miembros de la profesión. In re González Foster, supra. En el cumplimiento con su deber, "es indispensable que los abogados se aseguren de no proveer información falsa o incompatible con

la verdad y de no ocultar información cierta que debe ser revelada". In re Aponte Morales, 211 DPR 171, 173 (2023).

Además, este deber de actuar con sinceridad y honradez se extiende a la conducta de los abogados que también fungen como notarios. In re Bravo García, supra. Hemos expresado que "el notario que asevere cualquier hecho en un instrumento público que no concuerde con la verdad, infringe la fe pública notarial que, a su vez, constituye una violación al Canon 35 del Código de Ética Profesional, supra, independientemente de si hubo intención de faltar a la verdad". In re Villalona Viera, supra, pág. 374.

De otra parte, el Canon 38 del Código de Ética Profesional, supra, "impone a todo abogado el deber de conducirse de manera que exalte el honor y la dignidad de la profesión evitando en todo momento el incurrir en conducta impropia y/o en la apariencia de conducta impropia". In re González Foster, supra, citando a In re Aponte Morales, supra, pág. 183. Asimismo, el canon dispone que el abogado deberá conducirse en forma digna y honorable tanto en el desempeño de su función profesional como en su vida privada. Código de Ética Profesional, supra.

Además, el Canon 38 resalta que el abogado debe evitar a toda costa la mera apariencia de conducta profesional impropia. In re González Foster, supra. En ese sentido, "el notario que no desempeñe con cautela y celo la función pública del notariado no exalta la profesión legal". In re González Pérez, supra, pág. 650.

Ahora bien, hemos expresado que el abogado que incurre en incumplimiento del Canon 35 también infringe el Canon 38. Íd. Esto se debe a que la acción que infringe con el deber de sinceridad y honradez del Canon 35, a su vez "denota una conducta impropia que tiene un efecto lesivo en la honra de la profesión, ya que la conducta que realiza afecta sus condiciones morales y hace que sea indigno de pertenecer a este foro". Íd.

Por último, al disciplinar abogados que han infringido uno o varios de los cánones que se encuentran en el Código de Ética Profesional, supra, este Tribunal ha considerado varios factores para determinar la sanción correspondiente. A saber, hemos considerado como criterios relevantes los siguientes:

> (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente o la clienta; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fuera imputada y, (9) otros atenuantes o agravantes que surjan de los hechos. In re Santiago Maldonado, 214 DPR 1185, 1195 (2024)(citando a In re Roldán González, 195 DPR 414, 425 (2016)).

Por ser un proceso que afecta el derecho fundamental de un abogado a ganarse su sustento, el estándar de prueba requerido en los procedimientos disciplinarios es el de prueba clara, robusta y convincente. In re Pérez Rojas, supra, pág. 258. Hemos expresado que este esquema es intermedio, "pues es más exigente que el de preponderancia de la prueba, pero menos riguroso que el de evidencia más allá de duda razonable". In re Oller López, supra.

A la luz de este marco jurídico, procedemos a resolver la controversia de derecho que nos ocupa.

III

En el caso de autos, la Comisionada Especial celebró una vista en su fondo en la que determinó que no existía prueba clara, robusta y convincente de que el licenciado González Pérez hubiera infringido la Ley Notarial de Puerto Rico, supra, su Reglamento, supra, y los Cánones 18, 35 y 38 de Ética Profesional, supra, por lo que no procedía sancionarlo.

En el pasado, hemos expresado que la Comisionada Especial merece nuestra deferencia. Desempeña una función similar al juzgador de instancia pues está en mejor posición para aquilatar la prueba testifical. In re Sanfeliú Vera, 2025 TSPR 53, 215 DPR __ (2025). Ahora bien, esta deferencia que le otorgamos a las determinaciones de hecho realizadas por una Comisionada Especial "se circunscribe exclusivamente a aquellos asuntos relacionados a testimonios orales vertidos en su presencia, por haber sido ella 'quien observa la actitud de los testigos, su forma de declarar, sus gestos, y en general, su conducta al prestar declaración'". In re Bermúdez Meléndez, 198 DPR 900, 909 (2017), citando a In re Ortiz Brunet, 152 DPR 542, 549 (2017).

No obstante, este Tribunal no está obligado a aceptar el informe de una Comisionada Especial en un procedimiento disciplinario contra un abogado, "sino que podemos adoptar, modificar o rechazar tal informe". In re Sanfeliú Vera, supra; In re García Aguirre, 175 DPR 433, 442 (2009). Sin embargo, como regla general, daremos deferencia a las determinaciones

de hecho formuladas por la Comisionada Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re García Aguirre, supra.

En su informe, la Comisionada Especial confirió mayor credibilidad al testimonio del perito contratado por el licenciado González Pérez, así como a la teoría de falsificación planteada por el querellado. Sin embargo, al analizar cuidadosamente la totalidad de la prueba presentada, nos encontramos en la necesidad de apartarnos del informe rendido por la Comisionada Especial.

De un análisis de la prueba documental estipulada y admitida en evidencia, se desprende de forma clara, robusta y convincente que el notario González Pérez incurrió en las faltas éticas imputadas y, por lo tanto, actuó en contravención de la Ley Notarial de Puerto Rico, supra, y del Reglamento Notarial, supra.

Consta de los testimonios del señor López Ramos y el señor Graulau Heredia, que este último gestionó los traspasos en controversia y que para el 2021 este utilizaba los servicios notariales del licenciado González Pérez. Así, en su testimonio, el señor Graulau Heredia explicó que para la fecha de los hechos él recogía los certificados de títulos con la identificación del comprador, los llevaba a la oficina del licenciado González Pérez y luego los recogía. En cuanto a este asunto, la OPG confrontó al querellado, pues este alegó que no brindaba servicios al señor Graulau Heredia para el 2021, a pesar de que anteriormente había expresado que lo

conocía desde hacía tres años y que le brindaba servicios una a tres veces por semana.

Asimismo, el licenciado González Pérez testificó que desde que vio el documento supo que la firma no era suya. No obstante, este había indicado previamente que no podía aceptar o certificar si había juramentado los títulos cuestionados. Claramente, las versiones encontradas de los hechos que vertió el licenciado González Pérez minan la credibilidad de su testimonio.

Por si fuera poco, las partes afirman el hecho de que el licenciado González Pérez nunca tuvo ante sí a la señora Polanco Pérez ni al vendedor del Kia Sorento 2013. Además, las partes concurren en que la firma de la señora Polanco Pérez no fue plasmada por esta, y el número del afidávit que aparece en el documento de traspaso no corresponde con número alguno asignado en la obra del notario. En cuanto al traspaso del Nissan Rogue gris de 2010, no hay dudas de que la señora Polanco Pérez no compró dicho vehículo ni compareció ante el notario para realizar gestión alguna. Sobre el particular, el señor López Ramos indicó que se trataba de un error. Además, dispuso que solía llevar los documentos sin completar al gestor para que este último los tramitara. Por su parte, tanto el gestor como el letrado indicaron que para la fecha de los hechos entre ellos existía una relación de notario y cliente, donde el gestor solía llevar estos documentos al licenciado González Pérez para la autenticación correspondiente.

En cuanto al testimonio pericial presentado por las partes, ninguno de estos logró confirmar la teoría del

licenciado González Pérez sobre una posible falsificación de la firma y el sello. Al contrario, ambos peritos coinciden en que la firma en los documentos en cuestión tiene fluidez y no tiene temblores, propio de una firma natural que no intentaba ser falsificada.

Por otra parte, cabe resaltar que el testimonio al que se le otorgó mayor credibilidad fue al del señor Álvarez Ghigliotti, perito privado contratado por el licenciado González Pérez. No obstante, el propio perito afirma que los documentos que examinó fueron entregados por el notario, por lo que no podía certificar si en efecto el licenciado González Pérez fue quien los firmó. Por su parte, el señor Figueroa Ramos, quien tuvo ante su consideración firmas reconocidas y brindadas por el togado, así como el sello provisto por la ODIN, demostró que existían similitudes en los hábitos y características de escrituras entre las firmas conocidas y las cuestionadas, así como entre los sellos incautados por la ODIN.

Por tanto, queda suficientemente demostrado que el licenciado González Pérez incumplió con su deber ministerial como notario por faltar a la fe pública al aseverar hechos falsos y autenticar documentos en ausencia de las partes otorgantes; lo que constituyó una violación a los Arts. 2 y 56 de la Ley Notarial de Puerto Rico, supra, y la Regla 65 del Reglamento Notarial, supra.

En cuanto a la enumeración de los testimonios, surge de la prueba del caso de autos que no es la primera vez que el licenciado González Pérez asigna un número que no le corresponde a un afidávit ni la primera vez que olvida incluir

un testimonio en su índice y en el Registro de Testimonios. Surge con meridiana claridad que el togado refleja un patrón de prácticas impropias e inaceptables carentes del rigor exigido a todo profesional del derecho.

En virtud de lo anterior, al firmar y plasmar su sello notarial en los testimonios de autenticidad núm. 24,662 y 25,003 que obran al dorso de los traspasos en cuestión, el licenciado González Pérez faltó a la fe pública notarial. Asimismo, el letrado faltó a su deber ministerial al otorgar unos números de testimonios que no le correspondían ni los incluyó en su Registro de Testimonios ni en el Índice Notarial correspondiente en violación de los Arts. 12, 58 y 59 de la Ley Notarial de Puerto Rico, supra, y las Reglas 12 y 72 del Reglamento Notarial, supra. En detrimento de la fe pública notarial, el licenciado González Pérez procedió a autenticar un testimonio en ausencia de los comparecientes y sin haberlos identificado conforme lo requieren los Arts. 17 y 57 de la Ley Notarial de Puerto Rico, supra, y la Regla 67 del Reglamento Notarial, supra.

Así las cosas, con la conducta exhibida, el licenciado González Pérez también violó los Cánones 18, 35 y 38 del Código de Ética Profesional, supra. El letrado faltó a su deber de diligencia, sinceridad y honradez que imponen los Cánones 18 y 35 del Código de Ética Profesional, supra, al certificar un hecho falso. Asimismo, el letrado faltó a su deber de diligencia dado que no hizo las correspondientes entradas relacionadas a los traspasos de los vehículos en el Registro de Testimonios ni notificó los testimonios en el informe de

actividad notarial mensual correspondiente. Al así hacerlo, el letrado no exaltó la profesión legal conforme requiere el Canon 38 del Código de Ética Profesional, supra.

Por todo lo anterior, concluimos que el licenciado González Pérez violó los Cánones 18, 35 y 38 del Código de Ética Profesional, supra, los Arts. 2, 12, 17, 56, 57, 58 y 59 de la Ley Notarial de Puerto Rico, supra, y las Reglas 12, 65, 67 y 72 del Reglamento Notarial, supra.

Al determinar la sanción correspondiente en un caso disciplinario, hemos expresado que se considerará la reputación del abogado, su historial disciplinario, si la conducta es aislada, entre otros. In re Santiago Maldonado, supra. El licenciado González Pérez proveyó varias declaraciones juradas sobre su reputación en la comunidad. No obstante, esta no es la primera vez que el licenciado González Pérez es disciplinado por hechos similares a los de autos. Anteriormente, suspendimos al togado por haber infringido los cánones éticos que rigen nuestra profesión, así como la Ley Notarial de Puerto Rico, supra.

El togado ha empleado lo que, a nuestro parecer, es un patrón de conducta antiético y en violación de la Ley Notarial de Puerto Rico, supra. A saber, autenticó firmas en ausencia de los comparecientes en casos de traspasos de vehículos de motor. Así pues, la conducta del licenciado González Pérez no es aislada. El togado ha demostrado claro menosprecio de la Ley Notarial de Puerto Rico, supra, y su Reglamento, supra, lo que a su vez demuestra una falta de diligencia, competencia y celo profesional.

IV

Tomando en consideración lo anterior, suspendemos indefinidamente al licenciado González Pérez del ejercicio de la abogacía.

El licenciado González Pérez deberá notificar a sus clientes que, por motivo de su suspensión, no podrá continuar proveyéndoles consultoría ni representación legal, y devolverá a estos los expedientes de cualquier caso ya atendido o pendiente de resolución y los honorarios que haya percibido por trabajos no realizados. De igual manera, tendrá la responsabilidad de informar de su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente y mantenernos informados de cualquier cambio en su dirección, teléfono y correo electrónico. Deberá acreditar y certificar ante este Tribunal el cumplimiento con todo lo anterior, dentro del término de treinta (30) días, contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo podrá conllevar que no se le reinstale en la profesión de así solicitarlo en un futuro.

Notifíquese esta Opinión *Per Curiam* y Sentencia al señor González Pérez por medio de su correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA) y personalmente a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Virgilio J. González Pérez          CP-2024-0004
     (TS-15,218)

SENTENCIA

En San Juan, Puerto Rico, a 15 de enero de 2026.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de esta Sentencia, suspendemos indefinidamente al licenciado González Pérez del ejercicio de la abogacía.

El licenciado González Pérez deberá notificar a sus clientes que, por motivo de su suspensión, no podrá continuar proveyéndoles consultoría ni representación legal, y devolverá a estos los expedientes de cualquier caso ya atendido o pendiente de resolución y los honorarios que haya percibido por trabajos no realizados. De igual manera, tendrá la responsabilidad de informar de su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente y mantenernos informados de cualquier cambio en su dirección, teléfono y correo electrónico. Deberá acreditar y certificar ante este Tribunal el cumplimiento con todo lo anterior, dentro del término de treinta (30) días, contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo podrá conllevar que no se le reinstale en la profesión de así solicitarlo en un futuro.

Notifíquese esta Opinión *Per Curiam* y Sentencia al señor González Pérez por medio de su correo

electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA) y personalmente a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo